## THE SMEDLEY COMPANY *v.* THE EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued May 2—decided June 19, 1956

*Clarence A. Hadden,* with whom, on the brief, was *William L. Hadden,* for the appellant (defendant).

*Sidney L. Goldstein,* with whom, on the brief, was *Paul J. Goldstein,* for the appellee (plaintiff).

O'SULLIVAN, J. The facts are undisputed. They may be stated in this fashion: The plaintiff, to be called Smedley, owns and operates a public warehouse in New Haven. In the early part of 1950, Smedley had in storage for the American Maize-Products Company certain products known by the trade names "Frodex" and "Flufftex." During February, 1950, the Maize-Products company ordered Smedley to turn over to an independent trucker twenty-five bags of Frodex for delivery to the New London and Mohegan Dairies Corporation, hereinafter called Mohegan. Smedley's records show that twenty-five bags of Frodex were placed upon the warehouse platform and that they were subsequently picked up by the independent trucker. On May 25, 1950, Smedley was served with a writ in an action brought by Mohegan to recover $12,000 damages. The complaint, sounding in tort, alleged among other things that Smedley was negligent in delivering to the trucker twenty-five bags of Flufftex rather

than of Frodex. It further alleged that Frodex, unlike Flufftex, is a substitute for sugar and that, after the delivery of the Flufftex at New London, Mohegan used it in the manufacture of a large quantity of ice cream, all of which was thereby ruined. The complaint finally alleged that the damage to the ice cream was caused "by the neglect or careless conduct of . . . The Smedley Company and . . . its agents and servants in that they failed to exercise reasonable care . . . to guard against releasing from its warehouse and turning over to a carrier wrong or incorrect products." On July 24, 1950, Smedley was served with a writ in an action brought by the Maize-Products company. The complaint also sounded in tort and alleged, in substance, that the Maize-Products company incurred liabilities to the extent of $12,000 as a result of the negligence of Smedley in turning over to the trucker twenty-five bags of the wrong product which, after delivery to New London, were used in the manufacture of ice cream with disastrous results.

On December 31, 1949, the defendant had issued to Smedley a comprehensive general liability policy, to remain in force for one year. Under its terms, the defendant agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property . . . caused by accident." The defendant further agreed to "defend any suit against the insured alleging such injury . . . or destruction and seeking damages on account thereof, even if such suit is groundless." There was attached to the policy an indorsement stating that "the policy does not apply: . . . to the products hazard as defined in the policy." Shortly after being served, Smedley, in each instance, notified the defendant of the lawsuits,

but it refused to defend either action. Smedley then retained its own attorneys, who successfully defended the action brought by Mohegan and obtained a withdrawal of the other action. The case at bar was subsequently instituted by Smedley to recover the reasonable value of the services of the attorneys whom it had retained. The court rendered judgment for Smedley, and the defendant has appealed.

In its brief the defendant states the issue raised on the appeal as follows: Where the plaintiff, a warehouseman, had been sued for negligently placing in the hands of a deliveryman goods other than those ordered, was the defendant, as the plaintiff's insurer, justified in refusing to defend the actions against the plaintiff because of the "products hazard" exclusion in the policy of insurance issued by the defendant to the plaintiff? Before we examine this question, it should be observed that there is no room for construing an insurance policy when its terms are plain and clear. *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 310, 99 A.2d 141. Under such circumstances, the terms must be accorded their natural and ordinary meaning. *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716. But if the terms are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured should be adopted. *Scranton* v. *Hartford Fire Ins. Co.,* 141 Conn. 313, 315, 105 A.2d 780. And this rule of construction favorable to the insured extends to exclusion clauses. *Muller* v. *Sun Indemnity Co.,* 276 App. Div. 1028, 1029, 96 N.Y.S.2d 140, aff'd, 302 N.Y. 634, 97 N.E.2d 760.

It is obvious that, because of the indorsement attached to it, the policy affords no coverage in the event the insured is sued for injuries to property occasioned by a "products hazard." That much is

perfectly apparent. Whatever ambiguity exists comes not from the indorsement but from the printed definition of a "products hazard" found in the body of the policy. The term "products hazard" is there defined, so far as is here pertinent, as "(1) the handling . . . of goods or products manufactured, sold, handled, or distributed by the named insured, . . . if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured . . . ; (2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured, except (a) pick-up and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operations for which the classification stated in the Declarations or in the company's manual specifically includes completed operations." Because of the ambiguity which is evident upon reading the definition, we must construe the language in conformity with the legal principles to which we have referred above.

The first paragraph of the definition does not have the meaning attributed to it by the defendant. The "goods or products" which are involved in an accident, if the exclusion of coverage is to obtain, must be those "manufactured, sold, handled or distributed" by the insured. In the case at bar, the twenty-five bags placed by Smedley on its shipping platform for the independent trucker to pick up represented "goods or products" which, concededly, Smedley did not manufacture, sell or distribute. But, says the defendant, the "goods or products" may also be those that are "handled." It is true that the verb "handle" means to "touch; to feel with the hand; to

hold, take up, move, or otherwise affect, with the hand." Webster's New International Dictionary (2d Ed.). Words, however, do not always have the same import, and frequently nuances of meaning are sharply revealed by their association with other words, for, under the maxim "noscitur a sociis," they are known by the company they keep. *Josefowicz* v. *Porter,* 32 N.J. Super. 585, 591, 108 A.2d 865; *Evans* v. *City of Jackson,* 202 Miss. 9, 15, 30 So. 2d 315; 3 Corbin, Contracts, p. 111; 3 Williston, Contracts (Rev. Ed.) p. 1780; Black's Law Dictionary (4th Ed.) p. 1209; 11 Am. Jur. 663, § 53. Words often take color from each other. *Misch* v. *Russell,* 136 Ill. 22, 25, 26 N.E. 528; 66 C.J.S. .607; see *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732. Webster also defines "handle" as "to buy and sell; to deal, or trade, in." That the intention of the insurer was to restrict the word "handled" to this meaning is apparent from the words "manufactured, sold . . . or distributed," with which it is linked. See *McGrahan* v. *Public Indemnity Co.,* 269 Ill. App. 361, 364. Since the plaintiff was not engaged in buying or selling, dealing or trading in the Maize-Products company's goods or products, the first paragraph of the "products hazard" definition is not applicable and does not exclude coverage for the plaintiff.

The second paragraph of the definition presents an entirely different problem. Although purporting to provide another definition of "products hazard," the paragraph deals, not with products, but with operations, that is, with the activities and services of the insured. Ordinarily, the operations mentioned in the second paragraph are referred to in a "completed operations" clause, so-called, which is frequently found in liability policies. There might

have been less awkwardness of expressed intent had the policy before us, instead of utilizing the paragraph as an additional definition of "products hazard," segregated it in a "completed operations" clause, and then excluded such operations, as well as a "products hazard," from coverage. We must, however, take the contract as written, regardless of whether it is framed awkwardly or otherwise.

The policy, by virtue of the provisions of the paragraph now under discussion, excludes from coverage liability for tort claims arising out of Smedley's operations if, but only if, "the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled" by Smedley. The defendant's duty to defend, however, has a broader aspect than its duty to indemnify. *Goldberg* v. *Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 154, 77 N.E.2d 131. The distinction between liability and coverage should be kept in mind. The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. *Grand Union Co.* v. *General Accident, Fire & Life Assurance Corporation,* 254 App. Div. 274, 280, 4 N.Y.S.2d 704, aff'd, 279 N.Y. 638, 18 N.E.2d 38; *Socony-Vacuum Oil Co.* v. *Continental Casualty Co.,* 144 Ohio St. 382, 392, 59 N.E.2d 199. It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. 8 Appleman, Insurance Law & Practice, § 4683. Hence, if the complaint sets

forth a cause of action within the coverage of the policy, the insurer must defend. *Leonard* v. *Maryland Casualty Co.*, 158 Kan. 263, 267, 146 P.2d 378; *Springfield Township* v. *Indemnity Ins. Co.*, 361 Pa. 461, 464, 64 A.2d 761. On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend. *Fessenden School, Inc.* v. *American Mutual Liability Ins. Co.*, 289 Mass. 124, 130, 193 N.E. 558.

We are inevitably led to the conclusion that, because of the "completed operations" part of the definition of "products hazard," the complaints in the suits brought against Smedley failed in each instance to allege a cause of action for a liability covered by the policy. Although both complaints alleged negligence on Smedley's part in releasing the wrong product at its premises in New Haven, both further alleged that no injury to property —that is, no accident to property—occurred until the wrong product was used at New London by Mohegan in the manufacture of ice cream. The injury took place long after the operations of Smedley had ended and at a place away from its premises. In *Berger Bros. Electric Motors, Inc.* v. *New Amsterdam Casualty Co.*, 293 N.Y. 523, 58 N.E.2d 717, a contractor installed in turkey incubators electric motors equipped with fan blades. When the incubators were put into use some time later, many of the eggs were not hatched at all and the poults which were hatched either died in infancy or survived as puny creatures. This was owing to the negligence of employees of Berger Brothers in connecting the wiring so that the motors and fans operated in the wrong direction. The policy of the defendant insurer contained this clause: "This policy does not apply: . . . to accidents occurring

after operations have been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured . . . ." The court said (p. 527): "When the plaintiff completed its work and removed all of its tools, equipment and materials from the Chillson farm on December 23, 1940, no accident had occurred. Nothing had happened. There was no mishap whatever. Not until the eggs were placed in the incubators did any accident occur, and if we assume, as the plaintiff contends, that the accident did occur on February 20, 1941, 'when the cause and effect merged into a consummated accident,' this accident resulted from defective workmanship after the work of installation was completed. This must be so unless we yield to the plaintiff's contention and hold that the work was not completed at that time because the wiring was defective; but so to construe the language of the excluding clauses would deprive them of all meaning and purpose. By these clauses the parties intended to limit the casualty company's liability to accidents occurring during the progress of the work and to exclude liability for accidents occurring, after the work was completed, as the result of defective workmanship."

Since the complaints in the actions brought against Smedley showed on their face that the accident to property arose out of a "products hazard," as defined in the second paragraph of the definition, and that Smedley's activities and services had been completed at the time the accident occurred, the defendant was under no duty to defend on behalf of Smedley.

The claim that the operations of "pick-up and delivery" were excepted from the second paragraph of the definition and that this exception applied to

Smedley is without merit and requires no discussion.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.