### VIRGINIA A. FLINT *v.* UNIVERSAL MACHINE COMPANY
### (15238)

Borden, Berdon, Norcott, Katz and Palmer, Js.

---

638

Argued January 16—officially released August 6, 1996

*Thomas L. Brayton*, for the appellant (defendant-third party plaintiff Universal Machine Company).

*Lloyd D. Pedersen*, for the appellee (third party defendant Seaco Insurance Company).

NORCOTT, J. The principal issue in this appeal is whether a "products-completed operations hazard" exclusion in a comprehensive general liability insurance policy relieves an insurer of its duty to defend where the complaint[1] against the insured alleged injuries caused by the insured's negligent repair of a machine press, but failed explicitly to allege that the defective work was "completed" for purposes of coverage. The third party plaintiff, Universal Machine Company (Universal), the insured and defendant in the underlying negligence action, appeals from the judgment of the trial court in favor of the third party defendant, Seaco Insurance Company (Seaco), on the third party complaint. We affirm the judgment of the trial court.

The facts relevant to this case are set forth in the complaint filed by the plaintiff in the underlying action, Virginia A. Flint, and are undisputed. Universal is a machine shop engaged in the business of repairing industrial machinery. On various dates in October, 1990, Universal visited the site of Selmix-Alco Company (Selmix-Alco),[2] Flint's employer, to perform a retrofitting procedure on a fifty ton machine press used by Selmix-Alco in the manufacture of machine parts. Subsequent to these retrofitting procedures, the press malfunctioned, by repeating the operation cycle without warning.

---

[1] The plaintiff in the underlying action filed three complaints: (1) an original complaint; (2) an amended complaint; and (3) a revised amended complaint. The relevant allegations in each are essentially identical. References herein, therefore, are to the substantive allegations set forth in the revised amended complaint.

[2] Selmix-Alco was an intervening plaintiff in the underlying negligence action, and had sought reimbursement for moneys for which it was or would become obligated under the Workers' Compensation Act, General Statutes § 31-275 et seq.

The complaint further alleges that Universal made several failed attempts at correcting the problem. On December 5, 1990, while Flint was operating the press as part of her employment duties, the press once again malfunctioned, crushing several of her fingers in its mechanism.

Thereafter, Flint brought an action against Universal alleging negligence in repairing the press and in failing to warn her of the machine's dangerous condition. The negligence action resulted in a stipulated judgment against Universal in the amount of $43,000, and caused Universal to incur reasonable attorney's fees of $30,000 in defense of the action.

Universal then brought a third party action against its insurer, Seaco, alleging that Seaco's failure to defend Universal in Flint's negligence action was a breach of the parties' insurance contract, and sought damages for the full amount of the judgment including defense costs. See *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 113–14, 230 A.2d 21 (1967) (breach of duty to defend requires insurer to reimburse insured for full amount of obligation reasonably incurred by such insured as result of breach).

The comprehensive general liability policy issued by Seaco that was in effect on the date the repair work was performed and on the date Flint was injured contained an exclusion entitled "products-completed operations hazard." According to the definition in the policy, a "products-completed operations hazard" exclusion removes from coverage all occurrences of " 'bodily injury' and 'property damage' . . . arising out of 'your product' or 'your work.' " Excepted from this exclusion is "[w]ork that has not yet been completed or abandoned."[3] Thus, Seaco claims that if work has been com-

---

[3] Section 5, paragraph 11, of the comprehensive general liability policy entitled "Definitions," provides in pertinent part:

pleted the exclusion applies, and it is not obligated to defend an action alleging injuries arising out of such work.

Universal alleges in its third party complaint that Seaco, after conducting an investigation into the allegations of Flint's complaint, wrongly disclaimed coverage under the policy and wrongly declined both to defend and to indemnify Universal. Following a court trial, the trial court determined that the allegations set forth in Flint's complaint against Universal fell within the policy exclusion and, therefore, did not trigger Seaco's duty to defend Universal in that action.[4] Accordingly, the court rendered judgment for Seaco on the third party complaint. Universal appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, Universal claims that the trial court improperly determined that Seaco had not been not required to defend Universal in the underlying action. Specifically, Universal argues that: (1) the policy exclu-

"a. 'Products-completed operations hazard' includes all bodily injury and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

"(1) Products that are still in your physical possession; or

"(2) Work that has not yet been completed or abandoned.

"b. 'Your work' will be deemed completed at the earliest of the following times:

"(1) When all of the work called for in your contract has been completed.

"(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

"(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

"Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

[1] At trial, various documents, including the insurance policy and Flint's underlying complaint, as well as a stipulation of facts, were introduced. No testimony was offered.

sion relied upon by Seaco is ambiguous and thus should be construed against Seaco; (2) alternatively, the allegations of Flint's complaint were sufficient for the trial court to conclude that Seaco's duty to defend was triggered; and (3) even if the exclusion applied, the complaint's allegation of a failure to warn of the negligent repair work did not fall within the exclusion. Seaco argues that it did not have a duty to defend Universal because it could be clearly determined from the face of Flint's complaint that the alleged negligent work performed by Universal had been completed when her injury occurred, thus bringing the work within the exclusion. We agree with Seaco that the allegations contained in Flint's complaint did not trigger a duty to defend and, accordingly, affirm the judgment of the trial court.

## I

We address at the outset Universal's claim that the "products-completed operations hazard" exclusion relied upon by Seaco in refusing to defend Flint's claim is ambiguous and, therefore, must be construed against the drafter of the policy. We agree with the trial court's determination that the terms of the policy, particularly the foregoing exclusion, are clear and unambiguous and, therefore, leave no room for construction.

"It is the function of the court to construe the provisions of the contract of insurance." *Gottesman* v. *Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979). Our review of the trial court's decision of this issue is de novo. "Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Citations omitted.) *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588

A.2d 138 (1991). Although there have been cases in which the interpretation of an insurance contract has rested on factual questions; see, e.g., *Libero* v. *Lumbermens Mutual Casualty Co.*, 141 Conn. 574, 580, 108 A.2d 533 (1954); this is not such a case. It is undisputed that Universal's repair work had been performed negligently, and that Flint's injuries occurred as a result of such negligence. The only questions raised in this case are whether the allegations set forth in Flint's complaint triggered Seaco's obligation to defend Universal, its insured in the underlying action, and whether the "products-completed operations hazard" exclusion is ambiguous. These issues present questions of law, which we review de novo.

It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. *Cox* v. *Peerless Ins. Co.*, 774 F. Sup. 83, 86 (D. Conn. 1991); see *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 175–76, 622 A.2d 545 (1993). Universal's contention that the exclusion is ambiguous focuses on the manner in which "products-completed operations hazard" is phrased. It argues that because the term "hazard" is singular, and the terms "products" and "completed operations" are coordinated under the same hyphenated provision, an insured would reasonably assume that the exclusion only applies to situations involving the negligent manufacture or sale of a product, and not to Universal's day-to-day work, which is the off-premises repair of the equipment of others. We are not persuaded.

In *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, 143 Conn. 510, 123 A.2d 755 (1956), we addressed the issue of whether a claim of negligence arising solely out of the rendering of services fell within a "products hazard" exclusion, the definition of which contained, and thus excluded from coverage, completed opera-

tions. In *Smedley Co.*, the insured owner of a warehouse sought to recover from the insurer attorney's fees that the insured had incurred in defending itself in an action brought against it for negligently delivering to a buyer goods other than those ordered. Id., 513. The insurer had refused to defend the action on the ground that the allegations of the underlying complaint fell within the "products hazard" exclusion of the comprehensive general liability policy. Id., 513–14. The term "products hazard" was defined in the policy to include: " '(2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured . . . .' " Id., 514.[5]

We considered the definition of "products hazard" to create some ambiguity in the policy and noted that "[t]here might have been less awkwardness of

[5] *Smedley Co.* involved a pre-1966 standard comprehensive general liability policy, which contained a completed operations hazard as a subparagraph under the more general heading "products hazard." Several problems had plagued courts in interpreting the scope of coverage of the pre-1966 policy provision. The majority of courts facing the issue held that the completed operations provision did not apply to an insured if its business was predominantly service oriented, thus construing the provision against the insurer. Included among the factors influencing the courts' decisions were: (1) the completed operations hazard being tied in by hyphen, format and premium charge with the products hazard; (2) the singular nature of the word "hazard" in "products-completed operations hazard"; and (3) whether the language and arrangement of the policy would lead the ordinary person to believe he had coverage for risks arising from completed operations. R. Henderson, "Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know," 50 Neb. L. Rev. 415, 422–23 (1971). As one court noted about the pre-1966 policy, "when the contract involves . . . the rendering of services which do not involve the furnishing or supplying of any product or material, the question of liability insurance coverage under the products hazard provision becomes most difficult." *Nielson* v. *Travelers Indemnity Co.*, 174 F. Sup. 648, 654 (N.D. Iowa 1959), aff'd, 277 F.2d 455 (8th Cir. 1960); R. Henderson, supra, 50 Neb. L. Rev. 421. In 1966, the insurance industry adopted the revised standard comprehensive general liability policy, in which the completed operations hazard was generally set off from the products hazard exclusion.

expressed intent had the policy before us, instead of utilizing the paragraph as an additional definition of 'products hazard,' segregated it in a 'completed operations' clause, and then excluded such operations." Id., 515–16. We concluded, nevertheless, that the definition was sufficiently clear to exclude from coverage liability arising out of the insured's operations. Id.

Similarly in the present case, although the title "products-completed operations hazard" retains some of the same general flaws of expression that were at issue in the comprehensive general liability policy in *Smedley Co.*; see footnote 5; and thus might have been more artfully drafted, this provision cannot be construed in a vacuum. *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 168. The definition of the exclusion as contained in the policy clears up whatever confusion might be embodied in its title. The definition expressly states that all bodily injury or property damage "arising out of 'your product' or 'your work' " is excluded from coverage. As we noted in *Horak* v. *Middlesex Mutual Assurance Co.*, 181 Conn. 614, 616–17, 436 A.2d 783 (1980), "the use of the disjunctive conjunction 'or' unambiguously requires that either of the exclusions separated by the conjunction, if applicable, excludes coverage." By use of the conjunction "or" between product and work, it is made sufficiently clear that the "hazard" to be excluded is that arising from *either* products once out of the insured's possession, *or* from the insured's work once completed. There is no other reasonable reading that may be given to this language.

We recognize that, in purchasing the comprehensive general liability insurance policy in this case, Universal may have sought to protect itself from exposure to liability for its negligence in the performance of its routine work, work that the Seaco policy specifically excludes from coverage. We cannot, however, ignore the expression of policy language that, although it

retains some of the awkward phrasing that had apparently been eliminated in the revised comprehensive general liability policy, conveys its meaning nonetheless. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 703, 569 A.2d 1131 (1990). Reading the exclusion and its definition in their entirety, and in the context of the policy as a whole, we conclude that the clause is sufficiently clear, as a matter of law, in excluding from coverage those hazards arising from Universal's completed operations. We agree, therefore, with the trial court that the policy exclusion for completed operations is clear and unambiguous.

## II

Universal next claims that Flint's complaint was sufficient on its face to trigger Seaco's duty to defend. Again, we are not persuaded.

It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the complaint. See, e.g., *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 138, 267 A.2d 660 (1970). "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the com-

plaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Citations omitted.) *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, supra, 143 Conn. 516–17.

In *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 155 Conn. 112, we quoted with approval the words of Judge Learned Hand, explaining that "the duty to defend means 'that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered." The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is "groundless." ' " See *Lee* v. *Aetna Casualty & Surety Co.*, 178 F.2d 750, 751–52 (2d Cir. 1949). Hence, if Flint's complaint alleged facts that brought it within the ambit of coverage of Universal's liability policy, Seaco was obligated to defend Universal in the action. "On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, supra, 143 Conn. 517.[6]

Universal argues that because Flint's complaint failed explicitly to allege that the negligently performed work had been completed within the meaning of the exclusion, Seaco was not justified in refusing to defend Uni-

[6] The fact that Seaco looked to outside sources beyond the face of the complaint to determine the validity of the allegations is irrelevant, if the complaint, in and of itself, sufficiently disclosed whether coverage is warranted. See *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 155 Conn. 112 ("the duty to defend does not depend on facts disclosed by the insurer's independent investigation where the third party's complaint appears to be within the coverage").

versal in the underlying action on the ground that the allegation fell within the exclusion. Despite the absence in the complaint of any form of the word "complete" in reference to Universal's work, we nevertheless agree with the trial court that the requisite establishment of the work's completion may be readily gleaned from the allegations set forth in the complaint.

The applicable provision of Universal's policy that defines when work is deemed "completed," and thus excluded from coverage, is contained in paragraph 11 (b) (3) of the definitions section. It provides that Universal's work "will be deemed completed . . . [w]hen that part of the work done at a job site has been put to its intended use by any person." Thus, once the equipment is put to its intended use, the work is deemed "completed" for purposes of coverage.

The trial court properly concluded that, when she was injured, Flint had been putting the machine press to its "intended use," and that this fact was clearly alleged in her complaint. The parties had stipulated that Universal's work was performed at the Selmix-Alco site. The only question, therefore, is whether at the time Flint sustained her injuries, she was using the press for purposes other than those for which it was designed. Flint alleged in her complaint, however, that at the time of her injuries she was an employee of Selmix-Alco and had been assigned to operate the press. Flint further alleged that as a result of her operation of the press, it malfunctioned, causing her to sustain injuries. Flint's complaint clearly alleged, therefore, that when the injury occurred she had been operating the machine in accordance with its intended use as part of her employment duties. Contrary to Universal's claim, the requisite events necessary to trigger the exclusion were sufficiently alleged. We agree with the trial court, therefore, that Flint's use of the machine press at the time she sustained her injury fits squarely within the definition

of the excluded "completed work" set forth in paragraph 11 (b) (3) of the policy.

Further, the allegations of the complaint regarding the previous repairs to the press support the conclusion that the repairs constituted a "completed operation" as defined in the policy language. To hold otherwise would be to conclude that Universal's workmanship was not completed because the repairs had been negligently performed, leaving the machine in a perpetually defective state. As we stated in *Smedley Co.*, and as was noted by the trial court, to so "construe the language of the excluding clauses would deprive them of all meaning and purpose." (Internal quotation marks omitted.) *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, supra, 143 Conn. 518. The rationale for the insurer's use of such an excluding clause thus becomes clear. A policy that contains an exclusion for "completed operations hazard" conveys the parties' intention " 'to limit the [insurer's] liability to accidents occurring during the progress of the work and to exclude liability for accidents occurring, after the work was completed, as the result of defective workmanship.' " Id. We conclude, therefore, that the trial court properly determined that Flint's complaint on its face alleged that Universal's work was "completed," thus bringing it within the policy exclusion and relieving Seaco of its duty to defend Universal in the underlying action.

### III

Universal's final contention is that Seaco was obligated to defend Universal because the negligent failure to warn allegation contained in Flint's complaint[7]

---

[7] Flint's complaint alleged as follows: "The injuries and losses suffered by the plaintiff, Virginia A. Flint, were caused by the negligence and carelessness of the defendant [Universal Machine Company] . . . in one or more of the following ways . . . [i]n that the defendant failed to give any warning or notice to the plaintiff, of said unsafe and dangerous condition . . . ."

removed the claim from the "products-completed operations hazard" exclusion. In this regard, Universal argues that an allegation of a failure to act, as distinguished from the defective performance of an act, mandates coverage under the policy. We agree with the trial court that the failure to warn allegation set forth in Flint's complaint relates to and is part of the defective workmanship claims upon which the complaint is founded and, therefore, that the policy exclusion applies.

Whether failure to warn of a defective condition is encompassed within a "products-completed operations hazard" exclusion is a question of first impression in this state. On facts similar to those in the present case, other jurisdictions have consistently held that the failure to warn is included within the underlying claim of defective workmanship and, therefore, subject to the completed operations hazard exclusion. See *Weiss* v. *Bituminous Casualty Corp.*, 59 Ill. 2d 165, 172–73, 319 N.E.2d 491 (1974); *American States Ins. Co.* v. *Aetna Life & Casualty Co.*, 177 Ind. App. 299, 310, 379 N.E.2d 510 (1978); *State Farm Fire & Casualty Co.* v. *Avant*, 404 So. 2d 1311, 1313 (La. App. 1981) (property damage that occurs as result of faulty design and workmanship, including failure to warn of such defects, falls within completed operations hazard exclusion); *Mut* v. *Newark Ins. Co.*, 289 So. 2d 237, 248 (La. App. 1973), cert. denied, 290 So. 2d 910 (La. 1974) ("failure to warn of defective workmanship falls within the ambit of completed operations hazard where damage from such failure results after the work is completed"); *Oceanonics, Inc.* v. *Petroleum Distributing Co.*, 280 So. 2d 874, 880 (La. App. 1973), aff'd, 292 So. 2d 190 (La. 1974) (where close relationship between failure to warn and completed operations hazard exists, exclusion from coverage of latter operates to exclude from coverage allegations of former).

In *Weiss* v. *Bituminous Casualty Corp.*, supra, 59 Ill. 2d 167, the underlying complaint contained five allegations of negligence. The first four involved negligence in loading magnesium onto a truck. The fifth alleged that the company had been negligent in failing to warn the driver of the dangerous cargo, which exploded. The court found that a completed operations hazard exclusion, which was almost identical to the one in Universal's policy,[8] operated to exclude coverage of claims based on injuries sustained as a result of negligence in loading the truck. Id., 172–73. The court rejected the company's argument that the allegation of failure to warn had created the potential that the injury arose, not from the negligent loading of the truck, but rather from the failure to warn the driver of the truck's contents so that he might take proper precautions. Id. It focused on the fact that the failure to warn allegation "was not centered on simply the failure to warn of the contents, but rather it was directed to the failure to warn of the *manner* in which the magnesium was loaded." (Emphasis added.) Id., 172. The court in *Weiss* concluded that because this final allegation "referred back" to those allegations of negligence that were excluded under the completed operations exclusion, the face of the complaint contained no allegations that would warrant coverage. Id., 172–73.

[8] The policy in *Weiss* provides in part: " 'This insurance does not apply . . . to bodily injury or property damage included within the completed operations hazard or the products hazard.' " *Weiss* v. *Bituminous Casualty Corp.*, supra, 59 Ill. 2d 168. Completed operations hazard is defined in the policy to " '[include] bodily injury and property damage arising out of operations . . . but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts of equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times . . . (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.' " Id., 168–69.

Similarly, in *American States Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 177 Ind. App. 305, the court recognized that "most accidents (which lead to lawsuits) can be traced to some preexisting negligence," and concluded that "[e]xtension of coverage to all such accidents would render a [p]roducts [h]azard exclusion meaningless in the many cases in which an insured recommends or makes representations about his products or services, *or fails to warn of potential dangers.*" (Emphasis added.) Id., 305–306.

The cases cited by Universal in support of its claim are distinguishable from the present case in that they did not involve the performance of faulty workmanship. Rather, they concerned the failure of a product seller to advise properly on the use of what could otherwise be a defective product. For instance, *Cooling* v. *United States Fidelity & Guaranty Co.*, 269 So. 2d 294 (La. App. 1972), cert. denied, 272 So. 2d 373 (La. 1973), involved the sale of a diesel engine and the subsequent failure to warn of the need for safety devices to be attached to the engine. The court noted that "the alleged negligence under the peculiar facts of this case wherein there is neither a defective product sold nor faulty workmanship involved, is . . . in the nature of a general risk of doing business which is the sort of risk which motivated [the obtaining of] liability insurance." Id., 297. Similarly, *Templet* v. *Goodyear Tire & Rubber Co.*, 341 So. 2d 1248 (La. App. 1976), cert. denied, 343 So. 2d 1077 (La. 1977), involved a failure to warn of the danger of installing a tire from the wrong side of a rim, not, as in the present case, a failure to warn of negligently performed repairs. Thus, the cases upon which Universal relies involve the sale of a product and the failure to warn of a danger incident to its known intended use. They do not address the type of failure to warn claim at issue in this case, which is a claim that refers to the hazards of defective workmanship,

which hazards are specifically excluded from coverage under the completed operations exclusion.

We find the reasoning in *Weiss* and *American States Ins. Co.* to be persuasive. Flint's complaint alleged that Universal failed to warn of the "unsafe and dangerous condition" of the machine press on which it had performed repairs. Clearly, this allegation refers back to those allegations comprising Flint's negligent workmanship claim against Universal. They are not separate and distinct claims. It logically follows that if claims based on the results of negligently performed work are excluded from coverage, then, so too, should an alleged failure to warn of such work be excluded as well.

We conclude, therefore, that the allegation of negligent failure to warn of defective workmanship in this case did not trigger a duty to defend where the defective workmanship itself was excluded from coverage under the policy exclusion at issue. To rule otherwise would be to obviate an otherwise applicable exclusion by a backdoor method.

The judgment is affirmed.

In this opinion the other justices concurred.