[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION FOR SUMMARYJUDGMENT (NO. 107) AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARYJUDGMENT (NO. 110)
I. Factual and Procedural History
The Town of Montville (hereinafter the "plaintiff") brings this action in two counts[1] against Fidelity and Guaranty Insurance Underwriters[2] (hereinafter the "defendant") pursuant to General Statutes § 52-29 in order to determine CT Page 8712 whether the defendant owes the plaintiff a duty to defend and indemnify it under the provisions of a general liability insurance contract.
The following facts are not in dispute. On July 1, 1992, the plaintiff and the defendant entered into a contract for commercial general liability coverage[3] (hereinafter "policy") whereby the defendant agreed to pay all sums incurred by the plaintiff as damages because of personal injury or injury to or destruction of property.[4] On March 14, 1995, Patricia A. Howard (hereinafter "Howard"), a former employee of the plaintiff's, brought an action against the Town of Montville, its mayor, Wayne Scott, and its financial director, Michael Hillsberg.[5] The gravamen of the Howard complaint is that Hillsberg, her immediate supervisor, publicly attacked and humiliated Howard, repeatedly called her credibility and reliability as an employee into question, that this treatment continued over the course of several months, and that as a result of this treatment Howard was forced to take a leave of absence from work because of physical ailments caused by work stress leading ultimately to her inability to return to work.
The plaintiff notified the defendant of the suit filed by Howard pursuant to the terms of the policy. On May 17, 1995, the defendant notified the plaintiff in writing that it disclaimed all liability under the policy as to the claims made by Howard. On July 13, 1995, the defendant retained counsel to provide the plaintiff a defense in the Howard matter under a reservation of right. On August 10, 1995, the defendant informed the plaintiff that it disclaimed all liability as to the claims made by Howard against the plaintiff and refused to undertake a defense. TheHoward suit is currently pending in Connecticut Superior Court.
On December 19, 1994, Ann Marie Glynn (hereinafter "Glynn"), a former employee of the Town of Montville, brought suit against the Town, its mayor, Wayne Scott, and its financial director, Michael Hillsberg.[6] The gravamen of Glynn's complaint is that she was summarily terminated after making comments to another employee about a "relationship" between Scott and a clerk in her office, and that, as a result, false statements concerning the reason for her termination were included in her personnel file.
The plaintiff notified the defendant of the suit filed by Glynn pursuant to the terms of the policy. On February 28, 1995, the defendant notified the plaintiff that it disclaimed all CT Page 8713 liability under the policy as to the Glynn claims, and refused to undertake a defense as to those claims. The Glynn matter is currently pending in federal district court.
On October 10, 1995, the plaintiff brought this declaratory judgment action against the defendant in order to resolve the coverage dispute. On November 25, 1996, the defendant filed a motion for summary judgment.[7] On January 30, 1997, the plaintiff filed a memorandum in opposition to the defendant's motion for summary judgment and a motion for partial summary judgment.[8] On April 25, 1997, the defendant filed an objection to the plaintiff's motion for partial summary judgment.[9] On June 6, 1997, the court (Handy, J.) heard oral argument on the respective motions. At that time, all parties were represented and had an opportunity to be fully heard.
II. Summary Judgment, Legal Standard
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 744-45, 660, A.2d 810 (1995). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Catz v. Rubenstein,201 Conn. 39, 48, 513 A.2d 98 (1986). "The party seeking summary judgment has the burden of showing the absence of any genuine issues as to all material facts which, under applicable principles of substantive law, entitle [that party] to judgment as a matter of law." (Internal quotation marks omitted.) Suarez v. DickmontPlastics, Corp., 229 Conn. 99, 105, 639 A.2d 99 (1994); Miller,
supra, 233 Conn. 744-45. "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v. Kissner, 229 Conn. 213,217, 640 A.2d 89 (1994). "Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." New Milford Savings Bank v. Roma,38 Conn. App. 240, 244, 659 A.2d 1226 (1995).
III. Discussion
CT Page 8714
The parties have limited their dispute to whether the underlying actions fall within the "personal injury" coverage afforded by the policy.[10] The parties have separated their arguments as to each claim, and the court follows suit.
A. Legal Framework
1. Declaratory Judgment Action, Generally
Declaratory judgment actions are governed by General Statutes § 52-29[11] and Practice Book § 391.[12] "The relief afforded in a declaratory judgment action is highly remedial and the statute and rules should be accorded liberal construction to carry out the purpose underlying such judgment." (Internal quotation marks omitted.) Pequot Spring Water Company v.Brunelle, 46 Conn. App. 187, 195, ___ A.2d ___ (1997).
2. Insurance Contracts, Generally
"It is the function of the court to construe the provisions of the contract of insurance. An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. The determinative question is the intent of the parties, that is, what coverage the . . . insured expected to receive and what the insurer was to provide as disclosed by the provisions of the policy. If the words of the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, the courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. . . . If, however, the insurance coverage is defined in terms that are ambiguous, such ambiguity is resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." Peerless Insurance Company v. Gonzales, 241 Conn. 476,481-82, ___ A.2d ___ (1997).
3. Duty to Defend and Indemnify, Generally
"It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, CT Page 8715 is determined by reference to the allegations contained in the complaint . . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether . . . [the complaint] state[s] facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . [T]he duty to defend means that the insurer will defend the suit, if the injured party states a claim, which is for an injury `covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact `covered.' The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is `groundless.'" (Citations omitted; internal quotation marks omitted.) Flint v. Universal Machine Co., 238 Conn. 637, 646-47,679 A.2d 929 (1996).
B. The Policy
The General Liability Policy in question provides three areas of coverage to the plaintiff: (1) Coverage A. Bodily Injury and Property Damage; (2) Coverage B. Personal and Advertising Injury Liability; and (3) Coverage C. Medical Payments. Coverage B is solely implicated in this decision.
The "personal injury" coverage afforded to plaintiff by the defendant is controlled by Section B of the insurance contract. Section B(1)(a) establishes the defendant's duty to defend: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any `suit' seeking those damages." The coverage applies to "`[p]ersonal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you . . . ." Subsequently, the policy includes a menu of offenses which the policy is deemed to cover, two of which are relevant to this matter: (1) "(d) [o]ral or written publications of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services", and (2) CT Page 8716 "(e) oral or written publication of material that violates a person's right of privacy." Neither party has alleged that any of the exclusions applicable to the "personal injury" coverage are implicated in these matters.
C. The Duty to Defend
 1. Does the Defendant have a duty to defend the plaintiff in the Howard matter?
The defendant asserts that the factual allegations in theHoward complaint do not trigger coverage under the "personal injury" portion of the policy. The defendant concedes that there are facts contained in the Howard complaint which, when construed liberally, could allege a cause of action for invasion of privacy. In this court's opinion that acknowledgement alone is sufficient to trigger the defendant's fiduciary duty to defend the insured. However, the defendant asserts that it does not have a duty to defend the plaintiff because the underlying complaint fails to state facts which would support a prima facie case for invasion of privacy. In particular, the defendant asserts that the complaint fails to establish a "publication" of the alleged derogatory statements.
The plaintiff argues that the Howard complaint alleges slanderous communication and at least two types of invasion of privacy. It argues that despite the shortcomings of the complaint there are facts alleged which could form the basis of a valid claim for invasion of privacy for which the Town could be held liable. The plaintiff concludes that the facts as pled are sufficient to trigger the defendant's duty to defend under the policy.
This court is required to look at the language of the policy and the facts as alleged in the complaint in making its determination as to whether the defendant's duty to defend has been triggered.[13] Paragraph two of the Howard complaint states in relevant part that Wayne Scott served as the mayor of the Town of Montville at all times during the period in question. Paragraph three states that Michael Hillsberg served as finance director for the Town of Montville at all times relevant to the acts in question. Paragraph six alleges in pertinent part that Michael Hillsberg "began a pattern of harassment and discrimination against plaintiff . . . . Said pattern created an unsafe work environment and included, but was not limited to, CT Page 8717 derogatory statements made to plaintiff concerning plaintiff's work abilities; statements made in a loud, threatening and abusive manner; and accusations calling plaintiff's trustworthiness into question."
By the policy's plain language the insurer has agreed to defend the plaintiff as to all claims against it for personal injury arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods; products or services; or oral or written publication of material that violates a person's right of privacy." "Publication" is not defined in the insurance policy. The defendant appears to argue that "publication" should be given its legal meaning, e.g., communication to a third person, however, publication by common usage has a broader definition. Black's Law Dictionary (6th Ed. 1990) defines "publication" as simply "to make public." Thus, the insurance contract is ambiguous as to the type of "publication" that would trigger coverage.[14]
Construing the contract in favor of the insured, this court finds that the defendant has a duty to defend the plaintiff in the Howard matter on the ground that the claims made by Howard fall within the "personal injury" coverage of the policy. The defendant's motion for summary judgment is denied as to theHoward matter, and the plaintiff's partial motion for summary judgment as to the defendant's duty to defend in the Howard
matter is granted.
2. Does the defendant have a duty to defend the plaintiff in the Glynn matter?
The procedural posture of the Glynn case presents this court with difficulty in ruling in favor of either the defendant or the plaintiff as to coverage in this case. Whether the defendant has a duty to defend the plaintiff clearly depends on the factual allegations in the underlying complaint. To date, counsel for Glynn has filed an original complaint, an amended complaint, and filed a request to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a) (subsequently denied by the district court). It has come to this court's attention that yet another request to amend has been filed in the Glynn action, which is currently pending.
Armed with this information, this court concludes that ruling CT Page 8718 on the respective motions as to Glynn would be premature. Thus, this court will stay its ruling on the defendant's motion for summary judgment and the plaintiff's motion for partial summary judgment as to Glynn until that time in which the district court rules on the second request to amend and this court is notified that such action has been taken.
IV. Conclusion
The defendant's motion for summary judgment is denied as to the Howard matter and stayed as to the Glynn matter. The plaintiff's motion for partial summary judgment as to the defendant's duty to defend the plaintiff is granted as to theHoward matter and stayed as to the Glynn matter.
Handy, J.