**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 7 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID M. ALBERT; WILLIAM H.
CRAVEN; CHARLES SAVALL; and
LEONID SHAPIRO; on behalf of
themselves and others similarly
situated,

        Plaintiff - Appellants,

        v.

ADVISOR'S CAPITAL
INVESTMENT, INC.; ROBERT K.
MANN; PACVEST ASSOCIATES,
INC.; STERLING TRUST
COMPANY,

        Defendants,

and

CUMBERLAND CASUALTY &
SURETY COMPANY,

        Defendant - Appellee.

No. 03-1393
(D. Ct. No. 01-WY-1117-CB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **KELLY,** and **McCONNELL**, Circuit

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Judges.

---

Plaintiff-Appellants David M. Albert, William H. Craven, Charles Savall, and Leonid Shapiro ("Plaintiffs"), as named representatives of a putative class, brought breach of contract and promissory estoppel claims against Defendant-Appellee Cumberland Casualty & Surety Company ("Cumberland"). The District Court granted Cumberland's motion for summary judgment on multiple grounds. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

The Plaintiffs, through a trust in which Sterling Trust Company acted as trustee, invested significant sums of money into a mutual fund investment program managed by Advisor Capital Investments, Inc. ("ACI"). Pac Vest Associates, Inc. is the parent company of ACI, and Robert K. Mann holds a controlling interest in Pac Vest. Upon Mr. Mann's direction, ACI deposited upwards of $10 million into Swiss bank accounts under the control of Credit Bancorp, Ltd. Credit Bancorp, pursuant to an investment strategy, was to invest these funds in mutual funds. Credit Bancorp, however, misappropriated the money. Although the Securities and Exchange Commission is pursuing an action against Credit Bancorp, the Plaintiffs have never recovered their assets.

Prior to delivering the funds to Credit Bancorp, ACI purchased a Registered Investment Advisor's Liability Insurance Policy ("Policy") from Cumberland.

The Policy, in essence, insures against a net loss in principal to mutual funds under ACI's control that result from a failure of the risk management strategy (i.e., ACI's investment strategy). The Policy expressly excludes coverage of ACI's clients (i.e., the Plaintiffs): "This Policy does not provide Insurance coverage directly to [ACI's] clients. Clients of [ACI] shall have no claim directly against [Cumberland] for any loss in any Account."

Cumberland also assisted ACI in the production of marketing materials. Thus, Cumberland produced a document entitled "Supplement to the Registered Investment Advisory Agreement Offered by Advisor's Capital Investments, Inc. Certification of Risk Management" ("Supplement"). This document, which expressly states that it is a supplement to the Policy between Cumberland and ACI, was distributed, apparently by ACI, to potential ACI investors, including the Plaintiffs. Similarly, Cumberland produced documents entitled "Certificate of Endorsement," which were apparently distributed by ACI to potential ACI investors.

After the misappropriation by Credit Bancorp, the Plaintiffs brought a putative class action suit and eventually settled with all Defendants except Cumberland. Cumberland then moved for summary judgment on Plaintiffs' breach of contract and promissory estoppel claims. The Plaintiffs countered that although they lack standing to sue on the Policy when read in isolation, the Policy

must be interpreted along with the Supplement. Thus, the Plaintiffs argued, they are either beneficiaries of the contract between Cumberland and ACI or are direct promisees of Cumberland and should escape summary judgment.

The District Court disagreed with the Plaintiffs. It held that the Policy itself was not ambiguous, that its plain language barred their contract suit, that the Supplement did not create contractual privity between Cumberland and the Plaintiffs, that the Supplement could not be used to interpret the Policy, and that even if it could be so used the plain language of the Supplement bars recovery. Similarly, the District Court rejected the promissory estoppel claim. It held that Cumberland failed to make a promise at all to the Plaintiffs and that even if the Supplement acted as a promise it was not definite enough to insure against Credit Bancorp's misappropriation.

The Plaintiffs appealed. Cumberland moved us to dismiss, arguing that the District Court had failed to enter a final judgment. We granted the motion. The District Court then entered its final judgment, and the Plaintiffs filed a second timely notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's "grant of summary judgment de novo, applying the same standards used by the district court." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

Although the movant must show the absence of a genuine issue of material fact, it "need not negate the nonmovant's claim." *See Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon its pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

### III. DISCUSSION

The Plaintiffs argue that the District Court erred in granting Cumberland summary judgment on their contract and promissory estoppel claims. We disagree.

*A.    The Contract Claim*

On appeal, the Plaintiffs raise several points of error in regard to the granting of summary judgment on the breach of contract claim.  First, Plaintiffs contend that under applicable choice of law doctrines, Connecticut substantive law, not Colorado law, applies.  Second, Plaintiffs argue that the Supplement makes clear that they have standing to sue as third-party beneficiaries of the Policy.  Third, Plaintiffs argue that the Supplement renders the terms of the Policy ambiguous.  Finally, Plaintiffs argue that under the terms of the Supplement, Cumberland is liable to them for the loss resulting from Credit Bancorp's misappropriation.

Cumberland counters that it is entitled to summary judgment under both Colorado and Connecticut law.   Second, Cumberland argues that the plain meaning of the terms of the Policy itself preclude Plaintiffs' status as third-party beneficiaries.   Third, Cumberland argues that relying upon the Supplement to create an ambiguity in the Policy is in direct violation of the parol evidence rule.  Finally, Cumberland argues that even under the terms of the Supplement, Plaintiffs have no insured loss.

We hold that the Supplement itself simply does not insure Plaintiffs' loss. As the District Court held, "Plaintiffs misconstrue the Supplement to argue in support of their view that the Supplement protects against the losses they have

- 6 -

incurred." Hence, even if we interpreted the Supplement as an insurance policy issued by Cumberland to the Plaintiffs as insureds, the terms of the "policy" would bar recovery.

Because the Supplement does not insure the Plaintiffs' loss, we can dispose of their contract claim without deciding the related issues raised on appeal. We need not pass on the merits of the choice of law issue because the Plaintiffs' argument fails under the laws of both Connecticut and Colorado. [1] Furthermore, we assume arguendo that the Plaintiffs have standing as third-party beneficiaries under the Supplement and that the parol evidence rule does not bar reliance upon the Supplement to interpret the Policy.

In *Travelers Ins. Co. v. Namerow*, 778 A.2d 168, 177 (Conn. 2001), the Connecticut Supreme Court expounded upon the law of exclusionary clauses in insurance policies. The court held that "'[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and

---

[1]Because Plaintiffs desire application of Connecticut law and Cumberland does not object, we apply Connecticut substantive law. However, we would reach the same outcome by applying Colorado state law. *See, e.g., Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1262 (Colo. 1998) ("The insurance contract at issue in this case is unambiguous; the plain and ordinary meanings of the terms regarding coverage and exclusion from coverage can be given effect."). Plaintiffs promissory estoppel claim, which we consider pursuant to Connecticut law, would receive similar treatment under Colorado law. *See, e.g., Berg v. State Bd. of Agriculture*, 919 P.2d 254, 259 (Colo. 1996) (applying § 90 of Restatement (Second) of Contracts as governing law on promissory estoppel).

enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.'" *Id*. (quoting *Schultz v. Hartford Fire Ins. Co.*, 213 Conn. 696, 702, 569 A.2d 1131 (1990)). Intent of the parties is to be found in "'the provisions of the policy.'" *Id*. (quoting *O'Brien v. United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996)). The court further held that a "'contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy.'" *Id*. (quoting *Flint v. Universal Machine Co.*, 238 Conn. 637, 643, 679 A.2d 929 (1996)).

The *Namerow* court provided further guidance: "'The policy words must be accorded their natural and ordinary meaning and any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.'" *Id*. (quoting *Hansen v. Ohio Casualty Ins. Co.*, 239 Conn. 537, 542- 43, 687 A.2d 1262 (1996)) (alterations omitted). The court expressly held that this rule of construction applies to exclusionary clauses in insurance contracts. *Id*. Finally, the *Namerow* court noted that "'construction of a contract of insurance presents a question of law[,] which [it] reviews de novo.'" *Id*. (quoting *Flint v. Universal Machine Co.*, 238 Conn. 637, 642, 679 A.2d 929 (1996)) (alterations omitted).

The Supplement's exclusionary clause contains two sentences. The first

- 8 -

sentence of the exclusionary clause of the Supplement reads: "The Agreement shall only provide protection against loss of Principal by an Account resulting from the failure of Advisor's Insured Risk Management strategy." The Supplement defines an "Advisor" as a "professional mutual fund analyst who is registered with the U.S. Securities and Exchange Commission." The Supplement further states that the Advisor "provides market timing services and/or asset allocation service to mutual fund investors based on technical analysis." Here, ACI was the Advisor. The Supplement defines a "Risk Management strategy" as a "professional investment service provided by the Advisor . . . which attempts to reduce market risk by transferring managed assets to a money market mutual fund or other investment to adjust for changing market conditions."

The plain language of the first sentence of the Supplement's exclusionary clause, *see Namerow*, 778 A.2d at 177, makes clear that the Supplement does not cover all losses. Instead, the Supplement expressly limits its coverage to losses that result from the failure of the Advisor's (i.e., ACI's) risk management strategy. Here, the loss was caused by Credit Bancorp's misappropriation. Because Credit Bancorp's misappropriation cannot be considered part of ACI's risk management strategy, we hold that losses suffered as a result of such action do not fall within the natural and ordinary meaning of the language used in the first sentence of the Supplement's exclusionary clause.

The fact that the exclusionary clause goes on to further limit Cumberland's liability in the second sentence does not alter our analysis. The second sentence of the exclusionary clause reads: "Advisor is not liable for losses caused directly or indirectly by any of the following, such loss or losses are excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss[.]" The remainder of the sentence goes on to list those losses that are excluded from coverage. The Plaintiffs make much of the fact that misappropriation is not included in this list.

Plaintiffs' argument, however, simply avoids the plain meaning of this second sentence. The plain meaning of the second sentence is to further limit the scope of Cumberland's liability as found in the first sentence of the exclusionary clause. As Cumberland is not liable for misappropriation even under the broader first sentence, the fact that misappropriation is not listed among the further excluded causes in the second sentence is of no consequence. Therefore, even if we construed the Supplement, as Plaintiffs urge, as constituting the terms of the insurance policy, and assume they have third-party standing to enforce it, the plain meaning of the Supplement itself bars recovery for a loss resulting from Credit Bancorp's misappropriation.

B.    *Estoppel*

In the alternative, Plaintiffs argue that even if the Supplement does not

provide grounds for a contract claim against Cumberland, it provides the grounds for an estoppel claim. Under Connecticut law, to establish estoppel Plaintiffs must prove: (1) that Cumberland made a "promise which [it] should reasonably expect to induce action or forbearance on the part of the promisee," and (2) an induced action or forbearance by the promisee that will result in an injustice unless the promise is enforced. *D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 520 A.2d 217, 221 (Conn. 1987) (adopting Restatement (Second) of Contracts § 90 (1973)). As to the first element, the promise must be definite, from the objective point of view, so as to reasonably induce reliance. *Id*. at 221-22.

Plaintiffs argue that the Supplement itself constitutes such a definite promise of insurance coverage. As we illustrated above, however, the plain language of the Supplement excludes insurance coverage for instances of misappropriation. Thus, even if the Supplement constitutes a promise made by Cumberland to the Plaintiffs, it is not definite enough to satisfy the elements of promissory estoppel under Connecticut law.

## IV. CONCLUSION

We do not doubt that the Plaintiffs have been severely injured by Credit Bancorp's misappropriation. The coverage offered by Cumberland, as laid out in plain language in the Policy and the Supplement, however, is very narrow in

scope.  As such, we AFFIRM.


                              ENTERED FOR THE COURT,


                              Deanell Reece Tacha
                              Chief Circuit Judge