[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed May 30, 1997
I. Introduction
This declaratory judgment action raises an important and recurring issue in insurance law. What is an insurance company's duty to defend when a plainly intentional tort is pled as negligence? For the reasons discussed below. I conclude that there is no duty to defend in the third party action involved in this case.
II. The DaCruz Action
In the fall of 1995, Michael Bullock ("Michael") and his father, Curtis Bullock ("Curtis"), were served with a complaint in the case of DaCruz v. Amity Regional School District, No. 52333 (Ansonia-Milford J.D.) (the "DaCruz action"). The complaint is dated October 4, 1995. It has not been amended. Because an insurer's duty to defend is determined by reference to the allegations contained in the complaint, Flint v. Universal Machine Co., 238 Conn. 637,646, 679 A.2d 929 (1996), the complaint in the DaCruz action must be described in some detail.
The plaintiffs in the DaCruz action are Hermenio and Maria CT Page 4899 DaCruz, the parents of a minor named David DaCruz. There are numerous defendants, including Michael and Curtis. Only the counts involving Michael and Curtis need be discussed here.
The bulk of the factual allegations of the DaCruz complaint are contained in the first count. That count alleges that on the afternoon of January 14, 1994, David DaCruz, Michael, and a second minor defendant named Chuck Kindle were students at the Amity Junior High School in Orange. According to the complaint:
 8. On the aforesaid date and at approximately the aforesaid time, the defendants, Michael Bullock and Chuck Kindle, approached the plaintiff, David DaCruz, and proceeded to verbally threaten the plaintiff.
 9. After verbally threatening the plaintiff, the defendant Chuck Kindle, held the books of defendant, Michael Bullock, while defendant, Michael Bullock, proceeded to continue to verbally threaten the plaintiff and push him around the immediate area.
 10. After the aforesaid verbal threats and physical pushing, the defendant, Michael Bullock, then struck plaintiff, David DaCruz, multiple times on his face and body with his hand and fists, causing plaintiff to fall to the ground, lose consciousness and causing the injuries as hereinafter set forth.
Two counts are directed against Michael. The fifth count alleges assault and battery. It claims that:
 12. The defendant, Michael Bullock, intentionally and with reckless and wanton disregard, assaulted and battered the plaintiff, David DaCruz, causing the injuries as hereinafter set forth.
 13. The actions of the defendant. Michael Bullock, were intentional, reckless, and willful in that he:
 a) intended to plan to cause severe injury to plaintiff, knowing that it would cause severe injury to plaintiff;
 b) intended to use physical force on plaintiff, knowing that it would cause severe injury to plaintiff; and.
c) intentionally assaulted and battered plaintiff. CT Page 4900
The sixth count, alleging negligence, is the focal point of this case. It claims that:
 12. The actions of the defendant, Michael Bullock, were negligent and careless, and caused the injuries as hereinafter set forth.
 13. The defendant, Michael Bullock, was negligent and careless in one or more of the following ways in that he:
a) failed to exercise reasonable care,
 b) negligently used an excessive and unreasonable amount of force when he knew or should have known that such use of force would cause substantial injury to the plaintiff; and
 c) negligently continued to use excessive and unreasonable force after he knew or should have known that plaintiff was unconscious or semiconscious.
The ninth count is directed against Curtis and Michael's mother, Sheila Meadows. It alleges that:
 13. The plaintiff's injuries were caused by the carelessness and negligence of the defendant parents, in one or more of the following ways, in that they:
 a. failed to exercise reasonable care in controlling their minor child so as to prevent him from harming the plaintiff; and
 b. failed to restrain their minor son, although they knew or should have known that the minor possessed a violent temper and a propensity for violence.
III. The Insurance Policy
On January 14, 1994, the date of the incident in question in theDaCruz action, Michael and Curtis resided with one Susan Bullock. The parties agree that Curtis and Susan Bullock were not married at the time. (They were married on June 25, 1994.)
From April 21, 1993 to April 21, 1994, Susan Bullock had a homeowner's insurance policy (the "policy") with State Farm Fire CT Page 4901 Casualty Co. ("State Farm"). The policy covers "insureds," in this case Susan Bullock herself, her "spouse," and any person under 21 in her care. (Policy at 1.) The policy states that, "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, [State Farm] will: 1. pay up to our limit of liability for the damages for which the insured is legally liable; and 2. provide a defense at our expense by counsel of our choice." (Policy, § 2 at 13.) An "occurrence" is defined as "an accident." (Policy at 2.) The policy also has an exclusions section. It excludes bodily injury or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of wilful and malicious acts of an insured." (Policy, § 2 at 14.)
After being served with the DaCruz action, Michael and Curtis tendered the action to State Farm and demanded a defense and indemnification pursuant to the policy. State Farm is defending them under a reservation of rights.
IV. This Action
State Farm commenced this declaratory judgment action in May 1996. The defendants are Michael and Curtis Bullock, and Hermenio, Maria, and David DaCruz. The amended complaint is in two counts. The first count alleges that the policy does not afford coverage for the DaCruz action against Michael because no "occurrence" took place and because the exclusionary language of the policy applies. The second count alleges, inter alia, that the policy does not afford coverage for the DaCruz action against Curtis because he is not an "insured."
Hermenio, Maria, and David DaCruz have appeared by counsel and are vigorously contesting this action. Curtis filed a pro se appearance in June 1996 but has subsequently failed to appear in court to contest this action in any way. Michael was defaulted for failure to appear on August 2, 1996. The real dispute here is thus between the injured third party and the insurance company. "In terms of fairness, the injured party should be able to present its case upon the ultimate issues, even if the insured does not choose to participate." Federal Kemper Insurance Co. v. Rauscher,807 F.2d 345, 355 (3d Cir. 1986).
On November 4, 1996, State Farm filed a motion for summary judgment. The motion was initially denied without prejudice CT Page 4902 because of insufficient notice to interested parties. P.B. § 390(d). Further notice was subsequently given. A hearing was held on May 12, 1997. The court now finds that all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof. For reasons discussed below, the court also finds that there is no genuine issue as to any material fact. P.B. § 384.
V. Discussion
A. The Duty to Indemnify
State Farm seeks a declaratory judgment both as to its duty to indemnify and its duty to defend. The Superior Court's ability to grant a declaratory judgment as to the duty to indemnify is, however, significantly restricted by Supreme Court precedent. In HartfordAccident Indemnity Co. v. Williamson, 153 Conn. 345,216 A.2d 635 (1966), the Supreme Court held that the statute now codified as Conn. Gen. Stat. § 38a-321 "furnishes a plain and simple method for the determination of the liability of the plaintiff to respond to a judgment obtained [in the pending action]."153 Conn. at 349. Given this fact, "the only proper exercise of discretion would be to leave the plaintiff to seek redress in a defense to an action under the statute should the occasion for that arise." Id. at 350.
State Farm points out that Williamson is in some tension with subsequent Supreme Court precedent. The Supreme Court has not, however, overruled the central holding of Williamson that it is inappropriate to consider the duty to indemnify in a declaratory judgment action litigated while the underlying action is pending. Under our law, the appropriate remedy is the procedure provided by § 38a-321. It is axiomatic that the Superior Court must obey the command of Supreme Court precedent.
For this reason, the motion for summary judgment must be denied insofar as it seeks a declaratory judgment as to the duty to indemnify.
B. The Duty to Defend
1. Justiciability
As I explained in United States Automobile Association v. Marburg,
15 Conn. L.Rptr. No. 9, 281 (December 4, 1995), a declaratory CT Page 4903 judgment action addressing an insurer's duty to defend raises different justiciability concerns than a declaratory judgment action addressing the duty to indemnify. This is so for two reasons. First,Williamson, which involved only the duty to indemnify, is not binding precedent on the question of duty to defend. Second, there is an important practical difference between the two duties. While Conn. Gen. Stat. § 38a-321 provides an appropriate procedure for an insurance company to defend against an indemnification claim that procedure does not address the duty to defend. A successful defense of a § 38a-321 action would not make State Farm whole, for its defense costs in the DaCruz action would not be reimbursed. As Marburg explains, a declaratory judgment action can consequently be brought to determine the duty to defend. It is appropriate to proceed to the merits of this aspect of State Farm's action.
2. First Count — Michael Bullock
"It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the complaint."Flint v. Universal Machine Co., supra, 238 Conn. at 646. The allegations referred to, however, are not the causes of action alleged in the third party complaint but the facts. "`The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage.'" Id. (quoting Smedley Co. v.Employers Mutual Liability Insurance Co., 143 Conn. 510, 516,123 A.2d 755 (1956)). (Emphasis added.) Hence, if the DaCruz
complaint alleges facts that bring it within the ambit of the liability policy in question, State Farm is obliged to defend Michael in the action. On the other hand, if the complaint alleges a liability that the policy does not cover, the insurer is not required to defend.Flint v. Universal Machine Co., supra, 238 Conn. at 647.
The distinction between alleged causes of action and alleged facts is crucial in this case. The sixth count of the DaCruz complaint, directed at Michael, alleges negligence. If the title of the cause of action were controlling, the duty to defend would be manifest. That is not, however, the case. Rather, the facts alleged by the sixth count must be examined in order to ascertain whether a duty of care exists.
The sixth count incorporates certain factual allegations of the CT Page 4904 first count by reference. Those allegations include claims that Michael approached the plaintiff. "verbally threaten[ed]" him, pushed him, and "struck [him] multiple times on his face and body with his hands and fist, causing plaintiff to fall to the ground, lose consciousness and causing [his] injuries." These factual allegations manifestly describe an intentional assault, as the filth count expressly confirms.
Paragraphs 12 and 13 of the sixth count, quoted in full above, are the crucial allegations in the complaint. Those allegations must be analyzed in detail. It is helpful to divide these claims into two groups: those which describe allegedly negligent acts with some particularity and those merely containing general allegations of negligence.
Paragraph 13(b) (c) on their face describe Michael's allegedly negligent acts with some particularity. Subparagraph (b) states that he "negligently used an excessive and unreasonable amount of force when he knew or should have known that such use of force would cause substantial injury to the plaintiff." Subparagraph (c) states that he "negligently continued to use excessive and unreasonable force after he knew or should have known that plaintiff was unconscious or semiconscious." These allegations fail to state a claim of negligence — as distinct from a claim of intentional assault — as a matter of law.
It is well established that "intentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive." American National Fire InsuranceCo. v. Schuss, 221 Conn. 768, 775, 607 A.2d 418 (1992). As Justice Holmes memorably said, "even a dog distinguishes between being stumbled over and being kicked." Oliver Wendell Holmes,The Common Law 3 (1881). For this reason, the same conduct cannot "reasonably be determined to have been both intentionally and negligently tortious." American National Fire Insurance Co. v.Schuss, supra, 221 Conn. at 777.
Subparagraphs (b) and (c) of paragraph 13 describe conduct that is intentional rather than negligent — as a matter of law. "If intent to harm is present, it is immaterial that the actual injury caused is different in character or magnitude from that originally contemplated."State Farm Fire Casualty Co. v. Bomke, 849 F.2d 1218,1219 (9th Cir. 1988). "The intent itself may be actual or inferred from the nature of the act and the accompanying reasonable foreseeability of harm." Tennessee Farmers Mutual Insurance Co. v.CT Page 4905Evans, 814 S.W.2d 49, 55 (Tenn. 1991). "The crucial question [is] whether [Michael] intended, or expected, to cause any personal injury, not whether he intended to cause the precise magnitude of the injuries sustained." City of Newton v. Krasnigor,536 N.E.2d 1078, 1081 (Mass. 1989).
The DaCruz complaint alleges that Michael approached, threatened, and pushed David DaCruz and "struck [him] multiple times on his face and body with his hands and fists, causing him to fall to the ground [and] lose consciousness." In such a case "reason mandates that from the very nature of the act, harm to the injured party must have been intended." Home Insurance Co. v. Nielson,332 N.E.2d 240, 244 (Ind.Ct.App. 1975). The asserted fact that, while in the course of this assault, Michael negligently used excessive and unreasonable force does not change the legal character of his act. Our law does not recognize the concept of a reasonably prudent assailant. An unreasonably forceful assault remains an assault. For this reason, subparagraphs (b) and (c) of paragraph 13 describe an act that is an intentional assault as a matter of law.
The second group of claims that must be analyzed consists of the more general allegations of negligence contained in paragraph 12 and subparagraph (a) of paragraph 13. Paragraph 12 alleges that Michael's actions were "negligent and careless." Subparagraph (a) of paragraph 13 alleges that Michael "failed to exercise reasonable care." Although these allegations are conclusory in nature; seeHoward v. Reden, 93 Conn. 604, 614, 107 A. 509 (1919); negligence is regarded as an ultimate fact that may be pleaded as such. 61A Am.Jur.2d Pleading § 101 (1981). But assuming, without deciding the point, that allegations of this general nature are sufficient to survive a request to revise or motion to strike, the question remains whether these allegations are sufficient to invoke an insurer's duty to defend when made in the context of the other allegations in the DaCruz complaint. For a number of different reasons, the answer to this question is no.
In the first place, as a practical matter, it is impossible to imagine any conceivable scenario under which an assault like the one described in the DaCruz complaint could be done negligently. Questions on this subject put to counsel for the DaCruz plaintiffs at the hearing failed to produce any satisfactory answer. There is no suggestion that Michael, for example, accidentally stumbled into David DaCruz. Counsel repeatedly raised the excessive force argument set forth in the specific factual allegations. As already discussed, however, those specific allegations fail to allege negligence CT Page 4906 as a matter of law.
Under these circumstances, the general allegations of negligence in the third-party complaint simply cannot be reconciled as a legal matter with the specific allegations of fact contained in the same document. No different or additional facts are pleaded. It can be appropriately determined from the factual allegations in the complaint that there is no basis for a duty to defend. Under these circumstances, the general allegations of negligence in the third-party complaint are not dispositive. Allstate Insurance Co. v. Mugavero,589 N.E.2d 365, 370-71 (N.Y. 1992).
This analysis is not inconsistent with the doctrine that an insurer has the obligation of defending groundless suits. See Flint v. UniversalMachine Co., supra, 238 Conn. at 647. The suits referred to in the latter doctrine are factually groundless suits. Id. If, for example, the DaCruz complaint had alleged, without a shred of evidence, that Michael accidently stumbled into David DaCosta, All-state would plainly be compelled to defined the suit, regardless of its factually groundless character. But that is not what has happened here. The principle that an insurer must defend factually groundless accusations "cannot be reversed . . . to make the insurer's duty to defend depend upon the skill in pleading of a third party." Shepard Marine Construction Co. v. Maryland CasualtyCo., 250 N.W.2d 541, 542 (Mich.Ct.App. 1976).
There is another practical concern here as well, aptly expressed by Judge Griffin of the Florida District Court of Appeal. "[A]bsent considerations of insurance . . . it would never occur to a lawyer to plead this plainly intentional tort as negligence." Allstate InsuranceCo. v. Conde, 595 So.2d 1005, 1008-09 (Fla. Dist Ct. App. 1992) (Griffin. J, concurring). As Judge Griffin goes on to explain:
 The problem is that such a pleading creates a perfect conspiracy between a plaintiff and the insured . . .
 The plaintiff pleads negligence in a case like this because he wants a deep pocket from which to satisfy a judgment or, even better, to obtain a settlement. Normally when a defendant is sued on a theory that is inadequately pleaded, he gets the claim dismissed or, if the claim is invalid under controlling law, he gets a summary judgment. But in cases such as this the normal antidotes for invalid claims do not work. An insured defendant is often totally committed to the negligence pleading of the plaintiff because as long as the negligence CT Page 4907 claim is included in the complaint, the insured must be provided a defense on the intentional tort claim, a benefit he would not have if the spurious negligence claim were missing. It is also more likely the insurer will come up with the money to settle the entire case based on the cost of defending the negligence claim. . . . In a case where neither the plaintiff nor the defendant wants the covered claim disposed of, it is most unlikely to disappear.
Id.
This analysis is manifestly pertinent to the present case. The general allegations of negligence in the DaCruz complaint "are a transparent attempt to trigger insurance coverage." State FarmFire Casualty Co. v. Watters, 644 N.E.2d 492, 498 (Ill.Ct.App. 1994), cert. denied, 649 N.E.2d 425 (Ill. 1995). In a case like this "the reasonable expectation of the insured as to the scope of his coverage weighs against coverage. A reasonable insured could not reasonably expect his insurance policy to pay for the consequences of such a fierce and brutal beating of another individual." Yount v.Maisano, 627 So.2d 148, 153 (La. 1993) In addition, public policy prohibits the use of insurance to protect an insured from the consequences of such an act. "Otherwise, a liability policy could be used as a license to wreak havoc at will." Tennessee Farmers MutualInsurance Co. v. Evans, supra, 814 S.W.2d at 54.
Under these circumstances, State Farm has no duty to defend Michael in the DaCruz action.
3. Second Count — Curtis Bullock
The second count against Curtis, insofar as it involves the duty to defend, can be dealt with summarily. Curtis has no coverage unless he was a "spouse" within the meaning of the policy at the time of the incident in question. Curtis claims that he was a "spouse" by virtue of the fact that he was engaged to Susan Bullock and living with her at the relevant time. Given the fact that no marriage ceremony had yet occurred, this claim cannot succeed. "Although other jurisdictions may recognize common-law marriage or accord legal consequences to informal marriage relationships. Connecticut definitely does not." McAnerney v. McAnerney,165 Conn. 277, 285, 334 A.2d 437 (1973). (Footnote omitted.) "[T]he term `spouse' as used in insurance statutes and policies is not ambiguous and is defined as a legal wife or husband." Sypienv. State Farm Mutual Automobile Insurance Co., 443 N.E.2d 706,708 (Ill.App.Ct. 1982) (collecting authorities). For this reason, Curtis was not a "spouse," and State Farm has no duty to defend CT Page 4908 him.
C. Conclusion
For the reasons stated above, the following order is entered with respect to the motion for summary judgment:
 1. Insofar as it seeks a declaratory judgment concerning the duty to indemnify, the motion is denied.
 2. Insofar as it seeks a declaratory judgment that there is no duty to defend, the motion is granted with respect to both counts of the complaints.
Blue, J.
CT Page 4908