[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 112)
The plaintiff, Assurance Company of America, filed a one-count revised declaratory judgment complaint against the defendants, Mario Cabeleira, Terrie Cabeleira, Michael Gosha, Wayne Martucci, Casa de Tras-Os-Monte E Alto Doura, U.S.A. and Fernando Fernandes. The plaintiff alleges that it provided a homeowners insurance policy to the Cabeleiras effective March 10, 1995 through March 10, 1996. The policy excluded medical payments to others for bodily injury or property damage which is expected or intended by the insured.
By complaint dated June 23, 1997, Gosha and Martucci brought an action against the Cabeleiras, Cosa de Tras-Os-Monte E. Alto Doura, U.S.A. and Fernandes (the underlying action), alleging that the Cabeleiras intended to inflict injury on them and that their injuries were the result of the Cabeleiras' carelessness and negligence.[1] The plaintiff is providing a legal defense for the Cabeleiras in the underlying action under a reservation of rights, and risks a demand for indemnification on any judgment ultimately rendered in favor of Gosha and Martucci against the Cabeleiras. It is the plaintiff's position that the acts alleged by Gosha and Martuccido not constitute an "occurrence" under the CT Page 8652 policy, and that the alleged acts are expressly excluded from coverage. Therefore, the plaintiff seeks a declaration from the court that it has no duty to defend the Cabeleiras in the underlying action or to indemnify the Cabeleiras for damages which might result from the underlying action.
The plaintiff filed a motion for summary judgment on the ground that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The Cabeleiras and Gosha and Martucci have filed memoranda and affidavits in opposition to the motion for summary judgment. The matter was heard by the court on April 5, 1999.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . ." (Internal quotation marks omitted.)Maffucci v. Royal Park Limited Partnership, 243 Conn. 552,554-55, 707 A.2d 15 (1998)
A declaratory judgment action is an appropriate procedural vehicle for resolving issues of insurance coverage. See SafecoIns. v. Vetre, 174 Conn. 329, 387 A.2d 539 (1978). "Summary judgment may be sought in a declaratory judgment action because Practice Book § 379 [now Practice Book (1998 Rev.) § 17-44] provides in relevant part: `In any action, except actions for dissolution of marriage, legal separation, or annulment of marriage, and except administrative appeals . . . any party may move for summary judgment at any time. . . .'" United ServicesAutomobile Association v. Marburg, 46 Conn. App. 99, 102 n. 3,698 A.2d 914 (1997). CT Page 8653
The plaintiff argues that the Cabeleiras' alleged conduct is not covered under the policy, because the policy states that the Cabeleiras are provided coverage for "bodily injury" caused by an "occurrence." The term "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. The term "occurrence" is defined as an accident, including exposure to conditions, which result, during the policy period, in bodily injury or property damage. The plaintiff contends that based upon the allegations in the underlying complaint, the Cabeleiras' actions do not qualify as an "occurrence" under the policy.
The plaintiff also argues that the Cabeleiras' alleged conduct is excluded from coverage. The policy provides the following exclusion from coverage: "Medical Payments to others do not apply to `bodily injury' or `property damage': a. which is expected or intended by the insured." The plaintiff argues that although Gosha and Martucci describe the Cabeleiras' actions in part as being negligent, the actions were actually intentional and the injuries were an expected consequence thereof.
The Cabeleiras argue that their affidavits raise genuine issues of material fact and demonstrate that they did not act intentionally. The Cabeleiras also argue that allegations in the underlying complaint that they were intoxicated might have prevented them from having the intent to harm Gosha and Martucci, and therefore, their actions qualify as an occurrence under the policy.
Gosha and Martucci claim that the plaintiff has a duty to defend the Cabeleiras, because the underlying complaint alleges causes of action sounding in negligence as well as intentional tort, and the plaintiff's duty to defend the Cabeleiras must be determined by whether any allegation in the underlying complaint states a cause of action which the plaintiff can defend. Gosha and Martucci also urge the court to look at the entire complaint, not just those counts directed against the Cabeleiras, when determining whether there is a cause of action alleged which the plaintiff has a duty to defend. Finally, Gosha and Martucci argue that a question of fact exists concerning what happened during what they describe as a multi-person riot, and they contend that in a situation in which many people are fighting, some acts are not intentional, but merely negligent. Gosha and Martucci contend that if there was intent formed by the Cabeleiras, that intent may be negated by the Cabeleiras' use of alcohol on the night in CT Page 8654 question.
"Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . Thus, whether the actor knows the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury." Morascini v. Commissioner of Public Safety,236 Conn. 781, 809, 675 A.2d 1340 (1996). "It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive. The distinction between intentional and unintentional invasions draws a bright line of separation among shadings of almost infinitely varied human experiences . . . Although in a given case there may be doubt about whether one acted intentionally or negligently, the difference in meaning is clear. . . . In its most common usage, `intent' involves (1) . . . a state of mind (2) about consequences of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act. . . . Also, the intentional state of mind must exist when the act occurs. . . . Thus, intentional conduct extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does. . . . Furthermore, [i]t is not essential that the precise injury which was done be the one intended. . . . Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." (Citations omitted; emphasis omitted; internal quotation marks omitted.) United Services Automobile Associationv. Marburg, supra, 46 Conn. App. 105.
"A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment." Suarez v.Dickmont Plastics Corp. , 229 Conn. 99, 111, 639 A.2d 507 (1994). "We have also held, however, that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises, Inc.v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506 (1992). CT Page 8655
Mario Cabeleira attests to the following facts. Both he and his wife, Terrie Cabeleira, attended a dance on June 25, 1995, which was sponsored by Casa de Tras-Os-Motes E Alto Doura. (Opposition To Motion For Summary Judgment, Affidavit of Mario Cabeleira ¶ 3). During the dance a fight broke out, causing people to run toward the Cabeleiras, knocking Terrie Cabeleira to the ground. (Affidavit of Mario Cabeleira ¶ 4). When Mario Cabeleira bent down to assist Terrie Cabeleira, he too was knocked to the ground. (Affidavit of Mario Cabeleira ¶ 5). As the Cabeleiras attempted to move through the crowd, Mario Cabeleira was grabbed from behind by a person who identified himself as a police officer. (Affidavit of Mario Cabeleira ¶¶ 7 8). After complying with the officer's orders to lie on the ground, Mario Cabeleira was sprayed in the face with mace, which temporarily blinded him. (Affidavit of Mario Cabeleira ¶ 9). While still on the ground, someone else came over and began to jump on Mario Cabeleira's back. (Affidavit of Mario Cabeleira ¶ 10). Mario Cabeleira was later told by Terrie Cabeleira that the person jumping on Mario Cabeleira was another police officer, who was threatening to kill Mario Cabeleira. (Affidavit of Mario Cabeleira ¶¶ 10-11). After that, Mario Cabeleira was placed in handcuffs and taken to a police car, without having hit anyone or intending to hit or harm anyone. (Affidavit of Mario Cabeleira ¶ 12).
Terrie Cabeleira agrees with the averments in Mario Cabeleira's affidavit and adds the following. As the Cabeleiras were making their way through the crowd, Mario Cabeleira was grabbed from behind by an non-uniformed man, while two or three uniformed policemen began to spray mace indiscriminantly into the crowd. (Affidavit of Terrie Cabeleira ¶ 5). Mario Cabeleira was sprayed in the face with a large amount of mace and then put on the ground when a uniformed police officer jumped on Mario Cabeleira's back with his knees. (Affidavit of Terrie Cabeleira ¶¶ 5-6). Terrie Cabeleira thought the officer might have mistaken Mario Cabeleira for another person involved in a prior altercation. (Affidavit of Terrie Cabeleira ¶ 6). The officer jumping on Mario Cabeleira's back then drew his sidearm and threatened to kill Mario Cabeleira. (Affidavit of Terrie Cabeleira ¶ 7). At this point, Terrie Cabeleira was able to identify this officer as Martucci. (Affidavit of Terrie Cabeleira ¶ 7). Gosha convinced Martucci to put his weapon away and the officers handcuffed Mario Cabeleira and took him to a police car. (Affidavit of Terrie Cabeleira ¶ 9). Martucci then screamed at other officers to arrest Terrie Cabeleira, saying that she had CT Page 8656 kicked him. (Affidavit of Terrie Cabeleira ¶ 12) Terrie Cabeleira does not recall kicking anyone and does not believe that she did so, although she does not rule out the possibility that her "slipper shoe" might have come in contact with someone. (Affidavit of Terrie Cabeleira ¶ 10).
A genuine issue of material fact exists as to whether the Cabeleiras' actions were intentional and therefore not covered under the policy. There is evidence that the Cabeleiras did not act with an intent to harm Gosha and Martucci, but rather that Mario Cabeleira acted only to free himself from an unknown assailant. This evidence conflicts with the allegations in Gosha and Martucci's complaint that the Cabeleiras acted intentionally.
The contradictory versions of the underlying events given by the Cabeleiras in their affidavits and by Gosha and Martucci in their complaint raise genuine issues of material fact which preclude the court from finding that although the underlying complaint alleges both intentional and negligence acts, the Cabeleiras acted only intentionally.
The conflicting evidence presented here does not lend itself to an obvious conclusion as to whether the Cabeleiras acted intentionally or negligently. Thus, it is distinguishable fromState Farm Fire Casualty Co. v. Bullock, Superior Court, judicial district of New Haven at New Haven, Docket No. 387111 (May 30, 1997, Blue, J.) (19 Conn. L. Rptr. 599). Bullock was a declaratory judgment action in which the underlying complaint alleged intentional and "negligent" assault by one student against another. When analyzing the negligent assault allegations, the court found that "it is impossible to imagine any conceivable scenario under which an assault like the one described . . . could be done negligently" and that there was no suggestion, for example, that the aggressor accidentally stumbled into the victim. Id., 602. This court cannot make the same factual determination from the facts averred to here. The Cabeleiras recount a factual scenario which includes crowds of people pushing and running for safety. According to the Cabeleiras, in the confusion, Mario Cabeleira was mistaken by police officers as someone who had committed other assaults, but that Mario Cabeleira in fact committed no intentional acts and was merely attempting to aid his wife. Neither Gosha nor Martucci have filed affidavits. Under such circumstances, it is impossible for this court to conclude that the actions of the Cabeleiras constitute intentional torts which are not covered by the subject CT Page 8657 policy.[2]
For these reasons, the court cannot determine whether the alleged actions of the Cabeleiras were intentional or negligent. Therefore, the court cannot determine whether the acts are covered as an occurrence pursuant to the policy or excluded from the policy. Accordingly, the plaintiff's motion for summary judgment on its declaratory judgment complaint is denied.
SKOLNICK, J.